UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RENITA BAILEY, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 20-cv-7448 |
| v. | ) ) | Hon. Steven C. Seeger |
| MV TRANSPORTATION, INC., | ) ) | |
| Defendant. | ) ) ) | |

## ORDER

Plaintiff Renita Bailey brings this putative class action against Defendant MV Transportation, Inc., alleging violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* The dispute has had some procedural twists and turns. It is before this Court for the second time.

Bailey originally filed suit in state court, and MV removed the case to federal court. Bailey then dismissed the case, and filed a new action in state court. MV removed the second case (meaning the one currently before the Court), and the dispute landed on this Court's docket for a second time. Bailey responded by filing a motion to remand. *See* Dckt. No. 14.

For the reasons that follow, the Court grants Bailey's motion to remand.

### Background

Renita Bailey worked for MV Transportation, Inc. in Peoria, Illinois from October 9, 2019 to May 22, 2020. *See* Notice of Removal, at ¶ 19.5[1] (Dckt. No. 1). During that time, she held two jobs. From her first day until on or about December 19, 2019, she worked as a bus driver. *Id.* Then, Bailey was promoted to the position of payroll clerk, and she held that position until she was furloughed in May of 2020. *Id.*

Bailey's promotion changed more than just her job title. Of particular legal significance, Bailey's former position as a bus driver was a union job. Drivers for MV in Peoria are represented by Local No. 416 of the Amalgamated Transit Union. *Id.* at ¶ 20. And indeed, when she was a driver, Bailey was a member of the union and regularly paid union dues. *Id.* The

---

[1] The paragraph in question appears between paragraph 19 and paragraph 20. But it is misnumbered as paragraph 1. So, the Court cites it as paragraph 19.5.

union negotiates with MV on behalf of its members, and a collective bargaining agreement ("CBA") governs MV's employment of certain types of workers, including bus drivers. *Id.*

But the collective bargaining agreement does not apply to all of MV's workers. The CBA provides that the union has the authority to negotiate on behalf of "employees in the bargaining unit hereinafter described." *See* Labor Contract, at Article Four (Dckt. No. 1-2, at 9 of 30). The definition of the "bargaining unit" makes clear that the union acts on behalf of only certain types of employees. "The bargaining unit consists of Maintenance Employees, Dispatchers & Regular Operators in the Employment of MVT, but the bargaining unit does not include Office, Clerical employees, or any supervisory employees." *Id.* at Article Five (Dckt. No. 1-2, at 9 of 30).

When Bailey was promoted to payroll clerk, she moved into the kind of "Office" or "Clerical" position not represented by the union. *Id.* It is undisputed that Bailey's current position is not part of the bargaining unit. *See* Def.'s Resp. to Mtn. to Remand, at 4 (Dckt. No. 23) (acknowledging that "her current position of Payroll Clerk . . . is not covered by the terms of the CBA").

Shortly before Bailey arrived at MV, the company began to experiment with electronic timekeeping systems at its locations in Illinois. *See* Notice of Removal, at ¶ 21 (Dckt. No. 1). Basically, MV was moving to a system where employees scanned their fingerprints to punch in and out for their shifts. MV says that the move to this biometric system was part of its discussions with Local 416 when the two sides negotiated a new CBA in the summer of 2019. *See* Def.'s Resp. to Mtn. to Remand, at 2, 5 (Dckt. No. 23).

That new CBA governs the relationship between the union and the company from September 1, 2019 to November 30, 2022. *See* Notice of Removal, at ¶ 20 (Dckt. No. 1). So Bailey was a member of the bargaining unit (and bound by the CBA) at least while she worked as a bus driver from October 9 to December 19, 2019.

While the biometric time clocks were in the works before Bailey arrived at MV, Bailey never actually used one of the devices until 2020, meaning after her promotion to payroll clerk. *See* Cplt., at ¶ 17 (Dckt. No. 1-1). Bailey alleges that MV collected her fingerprint data several times, but the company never informed her of its purposes, provided a retention schedule or policy, or obtained her consent or release. *Id.* at ¶¶ 19–22.

Bailey eventually filed a lawsuit, claiming that MV's biometric time clock practices violated the Illinois Biometric Information Privacy Act. *See* 735 ILCS 14/1 *et seq.* Bailey styled her complaint as a putative class action, which she filed originally in Illinois state court.

Bailey filed that original lawsuit on August 11, 2020. *See Bailey v. MV Transportation*, No. 20-cv-5375, at Dckt. No. 1-1. That complaint alleged violations on behalf of a putative class containing more than 100 members, including some union members. *Id.* MV removed that original suit to federal court, alleging both diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and federal question jurisdiction under the Labor Management Relations Act, 29 U.S.C. § 185.

After removal, the case was assigned to this Court. *See Bailey v. MV Transportation*, No. 20-cv-5375. This Court issued an order requiring Bailey to show cause why the Northern District of Illinois was a proper venue, given that Bailey worked in Peoria (in the Central District of Illinois). *See Bailey v. MV Transportation*, No. 20-cv-5375, at Dckt. No. 9. And MV filed a motion to dismiss and a motion to strike the class allegations. *Id.* at Dckt. Nos. 21, 24. On November 17, 2020, Bailey voluntarily dismissed the case. *Id.* at Dckt. No. 30.

Bailey then filed a new lawsuit in state court with a similar but revised complaint. *See Bailey v. MV Transportation*, No. 20-cv-7448, at Dckt. No. 1-1. The new complaint alleges a much smaller class with fewer than 100 potential members. *See* Cplt., at ¶ 29 (Dckt. No. 1-1). The definition of the putative class expressly excludes members of the bargaining unit. *Id.* at ¶ 28.

MV responded by removing Bailey's second lawsuit to federal court, and the case returned to this Court's docket. MV invoked federal question jurisdiction under 28 U.S.C. § 1331. The Notice of Removal also included a reference to the Class Action Fairness Act, but MV later confirmed that the reference to that statute was an error. *See* Def.'s Resp. to Mtn. to Remand, at 3 n.1 (Dckt. No. 23) ("MVTI confirms that any reference to the statutory citation for CAFA in its Notice of Removal was inadvertent, and its basis for removal of the Amended Complaint is based solely on federal question jurisdiction."). There are only 27 putative class members, far below the 100 class members required by CAFA. So CAFA is not at issue.

The question before this Court is whether it has federal question jurisdiction under the Labor Management Relations Act ("LMRA").

## Discussion

As the party invoking federal jurisdiction, MV bears the burden to establish that all elements of jurisdiction existed at the time of removal. *See Tri–State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017) (holding that "the party seeking removal" must establish federal jurisdiction).

Ordinarily, under the so-called well-pleaded complaint rule, the existence of federal question jurisdiction depends on the allegations on the face of the complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "There is, however, an 'independent corollary' to that rule that confers federal jurisdiction where federal law has completely preempted an area of state law." *See Darty v. Columbia Rehabilitation and Nursing Center, LLC*, 468 F. Supp. 3d 992, 994 (N.D. Ill. 2020) (citation omitted).

The LMRA could potentially provide a foundation for federal jurisdiction because of complete preemption. The Supreme Court has read section 301 of the LMRA to establish that "'the relationships created by [a collective bargaining] agreement' [must] be defined by application of 'an evolving federal common law grounded in national labor policy.'" *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). The nation's "interests in interpretive uniformity and predictability" regarding collective bargaining agreements led Congress to

preempt state law in this area, creating federal jurisdiction for interpretive questions implicating collective bargaining agreements. *Id*. As a result, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," section 301 of the LMRA creates federal jurisdiction. *Id*. at 220.

MV argues that this case fits the bill. According to MV, resolution of Bailey's BIPA claims is inextricably bound up with an interpretation of the contract between MV and the union. That conclusion does not jump off the pages of the complaint. The complaint itself does not invoke the collective bargaining agreement. The complaint also doesn't allege that MV collected Bailey's fingerprints while she was a union member. And no union member is a part of the proposed class. *See* Cplt., at ¶¶ 16, 17, 30 (Dckt. No. 1-1). So nothing in the complaint expressly ropes-in the union.

Nevertheless, MV contends that the claims implicate the CBA. The thrust of the argument is that Bailey was a union member when the CBA went into effect, so she may have consented by proxy to the collection of her biometric data. And the question whether the union consented turns on the meaning of the provisions of the CBA. MV argues that this consent might also apply after Bailey was promoted to a non-union position. So MV says that it's necessary to look to the CBA to see if the union did, in fact, give MV the authority to collect fingerprints. *See* Def.'s Resp. to Mtn. to Remand, at 6–9 (Dckt. No. 23).

The problem with that argument is that MV offers no authority for the proposition that the collective bargaining agreement could continue to bind Bailey personally even after she moved to a non-union position. MV bears the burden of establishing federal jurisdiction, but it comes up empty regarding this critical link in its argument.

Instead, MV skips straight to the question of whether the CBA's "management rights clause" gave MV the right to collect employees' fingerprints. *Id*. at 9 ("[T]here is a federal question as to whether Local 416 consented on Plaintiff's behalf to MVTI's fingerscanning timeclock practices, when she was still a member of the union."). But logically anterior to that interpretive question is the question whether the management rights clause – or any of the CBA's other terms – continued to bind Bailey once she became a payroll clerk, which is a non-union position.

There are at least two reasons to think that the collective bargaining agreement did not continue to bind Bailey after her promotion to payroll clerk. First, the text of the CBA makes clear that it applies to certain *positions*, not *people*. The CBA defines the "bargaining unit" by referring to specific types of positions: "Maintenance Employees, Dispatchers & Regular Operators" but not "Office, Clerical employees, or any supervisory employees." *See* Labor Contract, at Article Five (Dckt. No. 1-2, at 9 of 30). The CBA defines an "employee" by reference to that position-oriented definition of the bargaining unit. *Id*. ("When the term 'employees' is used in this agreement, it shall mean an employee within the bargaining unit."). But if the union was negotiating on behalf of certain types of employees, and potentially consented on behalf of those types of employees, it is not clear why that consent would also be effective once Bailey ceased to be an employee of the type that the union represented. The CBA

4

clearly applies to employees in certain roles, but nothing suggests that it also applies to the individuals who leave those roles and thus leave the bargaining unit.

Second, cases from this district have distinguished between BIPA claims brought during a period of union membership and those brought when the employees were not union members. *See, e.g., Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *3–*5 (N.D. Ill. 2020) (distinguishing between claims accruing before and after the date when a relevant CBA went into effect); *Darty*, 468 F. Supp. 3d at 995 (recognizing that the "Seventh Circuit has concluded that BIPA claims based on biometric time clocks are properly subject to complete preemption," but distinguishing the named plaintiff's claim because "Ms. Darty is not a member of the union that has entered into a collective bargaining agreement with the defendant" so her claim "would seem to be unrelated to the Union").

Bailey focuses on the fact that MV did not collect her fingerprints until after she left the union. *See* Pl.'s Mtn. to Remand, at 7 (Dckt. No. 17). Bailey treats the issue like it involves claim accrual. The timing of the injury does matter, but it matters because it is tied to the scope of the consent. The question is whether the union consented on behalf of Bailey to the collection of her biometric data in the collective bargaining agreement. And the union didn't consent on behalf of Bailey for the period when she was not a member of the bargaining unit. So, the timing of the injury matters because the injury happened when she was no longer covered by the collective bargaining agreement.

Local 416 may have consented to MV's collection of biometric information in its most recent CBA, or it may not have. But either way, it's not clear why the union's consent would bind the union's individual members even when those members leave the union and move to jobs that are not part of the bargaining unit. The collective bargaining unit defines the scope of the union's representation by referring to specific types of employees, not specific people. MV has not explained why, when Bailey stopped being the type of employee that the union represents, she nevertheless continued to be bound by all of the terms of the CBA.[2]

The company believes that there is federal jurisdiction because the union consented on behalf of the bargaining unit, and the meaning and scope of that consent requires an interpretation of the collective bargaining agreement. The need to interpret the collective bargaining agreement, it argues, means that there is federal jurisdiction. But this Court does not need to interpret the content of the collective bargaining agreement at all. The union had the power to consent on behalf of the bargaining unit. The union did not have the power to consent on behalf of people with positions that were outside the bargaining unit.

---

[2] On this point, the Court wonders whether MV accepts the full implications of its argument. MV wants to carry over the union's purported consent to Bailey's new position, but does it also think that the other terms of the CBA continue to apply to her as well? Does she continue to enjoy the benefits that the union bargained for in the CBA, such as Overtime, Vacations, Holidays, Sick Days, etc.? *See* Labor Contract, at Articles Nineteen through Twenty (Dckt. No. 1-2, at 11–15 of 30). That seems unlikely. Would the CBA apply if Bailey left the company altogether, and then rejoined the company in a supervisory role that is outside the bargaining unit? Again, that seems unlikely. The better understanding would seem to be that the CBA's benefits and drawbacks equally have nothing to say about Bailey's new position, which presumably is governed by a separate, individual contract of employment.

There would be federal jurisdiction if the basis for Bailey's lawsuit was that the company scanned her fingers as a bus driver. Bus drivers are members of the bargaining unit, so the Court would need to interpret the collective bargaining agreement and decide whether the union consented on the bargaining unit's behalf. But that's not this case. When the company scanned Bailey's fingers, she was a payroll clerk, so she was outside the bargaining unit. The union had no authority to consent on behalf of positions that were outside the bargaining unit. So it did not consent for payroll clerks like Bailey. The meaning of provisions of the collective bargaining agreement is beside the point, because whatever they mean, they did not apply to non-bargaining unit employees.

Based on this jurisdictional deficiency, the Court does not need to weigh the availability and potential futility of union grievance procedures. *See* Def.'s Resp. to Mtn. to Remand, at 11–12 (Dckt. No. 23). Those procedures only enter the picture if section 301 of the LMRA, which has an exhaustion requirement, applies to the case. *See Del Costell v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 163 (1983). Since MV has not established that this case requires an interpretation of the CBA, and accordingly has not established that section 301 governs this lawsuit, there is no need to address exhaustion.

Similarly, the Court also notes that its references to the language of the CBA in this Order do not constitute the kind of "interpretation" of a collective bargaining agreement that creates federal jurisdiction under the LMRA. That's because "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of federal labor law." *See Allis-Chalmers Corp.*, 471 U.S. at 211. "[W]here resort to [a collective bargaining agreement's] provisions is merely pro forma, we can say with confidence that such consultation does not trigger § 301 preemption." *See Lowen Grp. Int'l v. Haberichter*, 65 F.3d 1417, 1422 (7th Cir. 1995).

The Court's reference to the CBA here is just this kind of pro-forma reference to check what types of employees are covered by its terms. MV cannot create federal jurisdiction simply by raising the existence of a collective bargaining agreement without establishing that the agreement continued to apply to Bailey during the relevant period.

Finally, the Court mentions MV's argument that "the collective nature" of Bailey's claims creates federal jurisdiction here. *See* Def.'s Sur-Reply to Mtn. to Remand, at 3 (Dckt. No. 29). MV made this argument in the course of discussing the Supreme Court's decision in *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987). *Caterpillar* stands for the proposition that an employee may assert individual legal rights, even when the employee is covered by a collective bargaining agreement, so long as the individual rights do not arise out of something that was collectively bargained. *Id.* at 396–98. And the Court went on to explain that there is not necessarily federal jurisdiction if an employer raises a defense based upon a collective bargaining agreement. *Id.* at 398. Neither of those situations is what we have here. But in any case, nothing in *Caterpillar* also established that a plaintiff who brings claims with a "collective nature" brings her lawsuit within the ambit of the LMRA on that basis. Just because Bailey seeks to represent a putative class, that does not make her claims "collective" in any sense of that word that is relevant to the LMRA or the union contract between MV and Local 416. *See* Def.'s

6

Sur-Reply to Mtn. to Remand, at 3 (Dckt. No. 29). MV's argument conflates a class action and a collective bargaining agreement, but nothing about Bailey's request for class treatment necessarily implicates the CBA.

**Conclusion**

For the foregoing reasons, the Court grants Bailey's motion to remand (Dckt. No. 14). Accordingly, MV's Motion to Dismiss (Dckt. No. 8) and Motion to Strike Class Allegations (Dckt. No. 11) are denied as moot.

Date: July 1, 2021

Steven C. Seeger
United States District Judge